**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SABRINA FINEHOUT RANDALL,
        Plaintiff,

      v.                                    Case: 8:16-cv-01531-EAK-TGW

NEUROINTERVENTIONAL ASSOCIATES, P.A.,
and BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC., d/b/a FLORIDA BLUE,
        Defendants.
_____/


**DEFENDANT NEUROINTERVENTIONAL ASSOCIATES, P.A.'S**
**MOTION TO DISMISS (Rule 12(b)(6))**
**AND INCORPORATED MEMORANDUM OF LAW**

1

## I.    <u>Introduction</u>

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Neurointerventional Associates, P.A. (NAPA) files this Motion to Dismiss because Plaintiff failed to state a claim against NAPA for which she would be entitled to relief. (Doc 1). NAPA was Plaintiff's former employer. (Doc 1 ¶ 3). In Count 1 (Doc. 1 at 6), under the Employee Retirement Income Security Act of 1974 ("ERISA," 29 U.S.C. §§1001 *et seq.*), as amended, and despite the absence of any allegation of an employment agreement or other written contract to provide health insurance benefits, or the attachment of any such document to the Complaint, Plaintiff sued her former employer, NAPA, and her third party health insurance carrier, Blue Cross Blue Shield of Florida, Inc., d/b/a Florida Blue (Florida Blue), for failing to provide Plaintiff with health insurance benefits. (Doc 1). In Count II (Doc. 1 at 7), Plaintiff sued both her employer and her insurer for purportedly failing to comply with §627.6645 Fla. Stat., regulating insurers. *Id.*

NAPA does not dispute that it is a Florida corporation that employed Plaintiff. (Doc 1 ¶¶2-3). NAPA does not dispute that, for a limited period of time while it could afford to do so, that NAPA purchased and paid for 100% of the premium for group health insurance from Florida Blue for NAPA employees that could electively choose to utilize such health insurance coverage. (Doc 1 ¶¶3-4). NAPA also does not dispute Plaintiff's contention that the group health plan provided by Florida Blue should properly be considered an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1) (Doc 1 ¶4) and subject to ERISA's preemption of all state law claims except those involving insurance regulations.

However, NAPA respectfully requests that this honorable Court dismiss the Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because: Count I (Doc 1 at 6) relies upon ERISA

for the provision of health insurance benefits when, as a matter of law, "ERISA does not create any substantive entitlement to employer-provided health benefits," (*Curtiss-Wright Corp.* v. *Schoonejongen*, 514 U.S. 73, 78 (1995)); and because Count II (Doc 1 at 7) relies upon §627.6645 Fla. Stat. when §627.6645 Fla. Stat. regulates Florida insurers and not employers.[1]

### II.    Argument

The basis of Plaintiff's Complaint against her former employer and her former insurer was the denial of health insurance benefits leading to outstanding medical bills for medical and/or surgical services rendered to the Plaintiff. The Plaintiff alleged that her former employer should have provided her with continuing health insurance benefits either as part of an ERISA welfare benefit plan (Doc 1 ¶¶1012) or under a Florida statute regulating Florida insurers. (Doc 1 at 7).

And, although pleaded, the actual nature of Plaintiff's medical condition along with the medical necessity of any evaluation or treatment only serves to confound the basic issues for which a remedy may be sought: 1) Whether under the terms of ERISA an employer may terminate a health insurance plan that was provided in the absence of any written agreement to do so; and 2) Whether §627.6645 Fla. Stat. (2013) confers any obligation upon an employer that is not an insurer for which a remedy may be sought.

---

[1] Unless such employers also happen to be insurers - and that too was not alleged in the Complaint.

NAPA respectfully urges the Court pursuant to Rule 12(b)(6) to Dismiss the Plaintiff's Complaint because the Plaintiff failed to state a cause of action against her former employer in Count I because "ERISA does not create any substantive entitlement to employer-provided health benefits," (*Curtiss-Wright at* 78) and in Count II because §627.6645 Fla. Stat. actually regulates Florida health insurance companies and not employers.

### a. Standard of Review

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., sufficient claims require, "a short and plain statement of the claim showing that the pleader is entitled to relief." But, in ruling on a motion to dismiss, while the court, "must consider the allegations contained in the plaintiff's complaint as true…[Rule 8(a)(2)] is inapplicable to legal conclusions. *Alcalde* v. *Blue Cross Blue Shield of Florida, Inc.*, 62 F. Supp. 3d 1360, 1363 (S.D. Fla. 2014) (*quoting Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009)). And, the court is limited to considering the four corners of the complaint. *Scelta* v. *Delicatessen Support Services, Inc.,* 57 F. Supp. 2d 1327, 1334 (M.D. Fla. 1999).

### b. Plaintiff failed to state a cause of action against NAPA in Count I because as a matter of law, 29 U.S.C. §§1132(a)(1)(B) and (a)(2) did not create any substantive entitlement to employer-provided health insurance coverage.

ERISA "creates a comprehensive regulatory scheme for employee welfare benefit plans and provides the exclusive means by which a participant may bring a civil action to recover benefits, enforce rights, or clarify rights. *Clark* v. *Unum Life Insurance Company of America*, 95 F. Supp. 3d 1335, 1346 (M.D., Fla. 2005) (quoting *Gilbert* v. *Alta Health & Life Ins. Co.,* 276 F. 3d 1292, 1295 (11th Cir. 2001)).

In a similar case with some minimal distinguishing features[2] where an employer terminated health insurance retirement benefits when a written settlement agreement did not define the terms and conditions of continuing coverage, the Ocala Division of this Court stated:

> Retiree health insurance plans are considered welfare benefit plans as defined by 29 U.S.C. § 1002(1), and are not pension plans under 29 U.S.C. § 1002(2). This distinction is crucial, because pension plans "are strictly regulated by ERISA and are subject to ERISA's vesting, participation, and minimum funding requirements," whereas welfare benefit plans "which are benefits such as medical insurance that may be ancillary to but are not part of a pension plan, are not subject to these requirements." *Alday v. Container Corp. of America,* 906 F.2d 660, 663 (11th Cir. 1990). *See also* 29 U.S.C. §§ 1051 and 1081 (exempting welfare benefit plans from ERISA's participation, vesting, and funding requirements); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90–91 (1983) **(ERISA does not establish any minimum participation, vesting, or funding requirements for welfare plans as it does for pension plans**); *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988) ("With regard to an employer's right to change medical plans, Congress evidenced its recognition of the need for flexibility in rejecting the automatic vesting of welfare plans. Automatic vesting was rejected because the costs of such plans are subject to fluctuating and unpredictable variables."). In other words, "**ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans**." *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 79 (1995).
>
> *Snyder* v. *Fed.-Mogul Corp.,* 996 F. Supp. 2d 1253, 1262 (M.D. Fla. 2014) **(emphasis added)**

---

[2] Unlike *Snyder* where the employer terminated a retiree's health insurance coverage, here the employer terminated an employee's health insurance coverage before that employer was aware of the employee's health issues. And unlike Snyder, here there the health insurance was not provided pursuant to any written agreement to provide coverage or continuing coverage.

Although Plaintiff alleged that "NAPA was the 'Plan Sponsor' and a 'fiduciary,'" (Doc 1 ¶5), Plaintiff failed to allege that NAPA actually did anything more than, at least temporarily, pay the premiums for the group health insurance obtained from Florida Blue. (Doc 1). NAPA admittedly purchased the group health insurance plan that was the subject of the Plaintiff's complaint and NAPA paid all of the associated premiums for such coverage while it was financially able to do so.

As a result, NAPA accepts that "ERISA may apply to an employee welfare-benefit plan, even though an employer's involvement in the plan is limited to the purchase of insurance." *Albright* v. *Union Bankers Ins. Co.,* 85 F. Supp. 2d 1302, 1304 (S.D. Fla. 1999) *(referencing* 29 U.S.C. § 1002(1); *Madonia v. Blue Cross & Blue Shield,* 11 F.3d 444, 447 (4th Cir.1993), *cert. denied,* 511 U.S. 1019, (1994); *Randol v. Mid–West Nat'l Life Ins. Co.,* 987 F.2d 1547, 1551 (11th Cir.1993), *cert. denied,* 510 U.S. 863, (1993)). But, since Plaintiff was an at-will employee under Florida Common Law without any written employment agreement, NAPA was, *ab initio*, never under no obligation to purchase any health insurance for Plaintiff and only did so gratuitously for the benefit of those employees that electively chose to take advantage of such coverage.

Plaintiff alleged the occurrence of a "serious medical condition…[that] was critical and required immediate care," (Doc 1 ¶¶15-16), Plaintiff also alleged that she had sufficient time to inform NAPA and also seek pre-approval for such care from Florida Blue. (Doc 1 ¶¶15-19). And, although NAPA appropriately approved Plaintiff's taking leave from work for surgery (Doc 1 ¶18), Plaintiff failed to allege that NAPA either provided Plaintiff's medical care, authorized or pre-authorized such medical care, or had anything to do with Plaintiff's

6

deductible for medical care. These allegations related to the Plaintiff's need for medical care only confound the issue of whether an employer must provide health insurance under ERISA in the absence of any written agreement or obligation to do so.

NAPA merely paid the premiums for group health insurance for the few employees that electively chose to utilize this gratuitous health insurance coverage while NAPA was financially able to afford such coverage. When NAPA was unable to continue to provide this employee benefit, a benefit NAPA was not obligated to provide under any written agreement to do so, NAPA informed its employees before effectively cancelling the group health insurance by withholding premium payment. Further, should it become necessary, NAPA will testify that NAPA informed the Plaintiff of such cancellation and that the Plaintiff never appealed NAPA's decision to cancel the health insurance. And, when as the policy holder NAPA ultimately received the notice of termination from Florida Blue, NAPA promptly provided such notice to the Plaintiff as the certificate holder.

Importantly, although Plaintiff alleges that she was provided with preapproval authorization from Florida Blue for her medically necessary care (Doc 1 ¶19), no such preauthorization was actually provided or attached to the Complaint.  Plaintiff also alleged that there was no remaining deductible due for her health insurance coverage while not providing any written documentation of the absence of the deductible. *Id.* Medical care aside however, in *Curtiss-Wright*, the Supreme Court was:

> mindful that **ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits.** Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. See *Adams v. Avondale Industries, Inc.,* 905 F.2d 943, 947 (CA6 1990) ("**[A] company does not act in a**

> **fiduciary capacity when deciding to amend or terminate a welfare benefits plan**"). Nor does ERISA establish any minimum participation, vesting, or funding requirements for welfare plans as it does for pension plans. See *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90–91, 103 S.Ct. 2890, 2896–2897, 77 L.Ed.2d 490 (1983) .
>
> *Curtiss-Wright Corp.* v. *Schoonejongen*, 514 U.S. 73, 78 (1995) (**emphasis added**)

As a result, the Plaintiff's health insurance should be considered an employee benefit plan that, in the absence of any writing to the contrary, may be adopted, modified, or terminated by an employer at any time. See *Curtiss–Wright at 78,* and See *Snyder* v. *Fed.-Mogul Corp.,* 996 F. Supp. 2d 1253, 1262 (M.D. Fla. 2014).  And in *Curtiss-Wright* the Supreme Court also held that the only potential complaint under ERISA was whether an employer impermissibly violated the terms of a written agreement to provide continuing coverage but that an employer's "amending its plan to deprive respondents of health benefits [was] not a cognizable complaint under ERISA." *Id.*

Further, notwithstanding Plaintiff's conclusory allegations to the contrary, as a matter of law, **"[A] company does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan."** *Id. (emphasis added).* And, in the absence of a written agreement to provide health insurance coverage, an Employer may adopt, modify, or terminate such health insurance at-will. *Id.* Plaintiff alleged that she was nothing more than NAPA's common-law, at-will employee (Doc. 1 ¶3). Plaintiff also alleged that NAPA provided Plaintiff with health insurance coverage. (Doc. 1 ¶4). NAPA's unilateral and gratuitous provision of health insurance coverage for Plaintiff's benefit (Doc 1 ¶4) failed to either create an ongoing

contractual right to continuing health insurance coverage or any ongoing right to future health insurance coverage.

Although Plaintiff concluded that NAPA, "breached a contractual relationship" (Doc 1 ¶32), Plaintiff failed to provide any evidence of an employment agreement, any other written contract, or any other written document requiring that NAPA provide Plaintiff with health insurance. And Plaintiff appears to allege that somehow her unilateral demand via Plaintiff's counsel for health insurance coverage (Doc 1 ¶34, and see Complaint Exhibit C) somehow created and entitlement to such coverage – even in the absence of any written agreement with NAPA to provide such health insurance coverage.

Because Plaintiff failed to plead the existence of any employment agreement and because Plaintiff also failed to attach any employment agreement to the Complaint, Plaintiff failed to provide anything other than a conclusory statement that NAPA was required to provide or continue to provide health insurance benefits.   Relying upon the allegations contained within the four corners of her Complaint, there was no written agreement by NAPA to provide health insurance benefits and ultimately the Plaintiff's claim to health insurance coverage under ERISA fails. Because there was no obligation under ERISA to provide continuing health insurance coverage for employees and because an Employer may adopt, modify, or terminate health insurance coverage under ERISA, and because there was no employment agreement to the contrary, pursuant to Rule 12(b)(6) Fed. R. Civ. P., Plaintiff failed to state a cause of action under ERISA for health care benefits.

   **c.  Plaintiff failed to state a cause of action against NAPA in Count II because §627.6645 Fla. Stat. (2013) regulates insurers and not to employers who are not themselves insurers.**

   In Count II, Plaintiff failed to state a cause of action against NAPA because §627.6645 Fla. Stat. (2013) regulates insurers, not employers. While ERISA "creates a comprehensive regulatory scheme for employee welfare benefit plans," ERISA's broad preemption of state law is limited by a savings clause exempting state laws regulating insurance. 29 U.S.C. 1144(b)(2)(A). *Clark* at 1346. And the basis for Count II, §627.6645 Fla. Stat. is such a state law regulating insurers. Notably, §627.6645, Fla. Stat. (2013) is titled, "Notification of cancellation, expiration, nonrenewal, or change in rates" and is a subsection of Chapter 627 "Insurance Rates and Contracts, Part VII Group, Blanket, and Franchise Health Insurance Policies" of Title XXXVI of the Florida Statutes titled, "Insurance." Accordingly, Plaintiff should be barred from bringing suit against her former employer under §627.6645 Fla. Stat. (2013).

   Plaintiff alleged that NAPA was Plaintiff's employer (Doc 1 ¶¶ 2 and 3), and that NAPA was, "a Florida corporation, duly organized and existing under the laws of Florida…" (Doc 1 ¶2). But Plaintiff failed to allege that NAPA was an insurer subject to §627.6645 Fla. Stat. (2013). And, although NAPA concedes that it did not pay the health insurance premiums leading to the health insurance plans cancellation, NAPA does not concede that it either owed a fiduciary duty of loyalty to the Plaintiff or that there was any contractual obligation between NAPA and the Plaintiff requiring that NAPA provide health insurance coverage. And, as noted above, "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. See *Adams v. Avondale Industries, Inc.,*

905 F.2d 943, 947 (CA6 1990) ("**[A] company does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan**"). *Curtiss-Wright at* 78. (**emphasis added**).

And importantly, premium non-payment is a critical issue related to the plain text interpretation of §627.6645 Fla. Stat. (2013). First, the subsections of §627.6645 Fla. Stat. (2013) refer to insurers throughout with only one potential obligation for employers in subsection (1). The subsections read (**emphasis added**): §627.6645(**1**), "Every **insurer**....if cancellation is for nonpayment of premium, only the requirements of section (5) apply"; §627.6645(**2**), "If an **insurer**..."; §627.6645(**3**), "If the **insurer**..."; §627.6645(**4**), "...the **insurer**..."; and §627.6645(**5**):

> If cancellation is due to nonpayment of premium, the **insurer** may not retroactively cancel the policy to a date prior to the date that notice of cancellation was provided to the policyholder unless the **insurer** mails notice of cancellation to the policyholder prior to 45 days after the date the premium was due. Such notice must be mailed to the policyholder's last address as shown by the records of the **insurer** and may provide for a retroactive date of cancellation no earlier than midnight of the date that the premium was due.

> §627.6645(5) Fla. Stat. (2013) (**emphasis added**)

Second, only subsection 1 potentially refers to employers in addition to insurers. And Plaintiff improperly concluded that this subsection placed a statutory obligation on NAPA: "Fla. Stat. §627.6645(1) also requires NAPA to provide any notice pertaining to cancellation of the Plan from Florida Blue to Plaintiff as soon as practicable." (Doc. 1 ¶42). But, the plain text of this section (**emphasis added**) places no statutory obligation on employers because it merely requires that subsection 5 (*vide supra*) controls for nonpayment of premium.

11

> Every **insurer** delivering or issuing for delivery a group health insurance policy under the provisions of this part shall give the policyholder at least 45 days' advance notice of cancellation, expiration, nonrenewal, or a change in rates. Such notice shall be mailed to the policyholder's last address as shown by the records of the insurer**. However, if cancellation is for nonpayment of premium, only the requirements of subsection (5) apply.** Upon receipt of such notice, the policyholder shall forward, as soon as practicable, the notice of expiration, cancellation, or nonrenewal to each certificate holder covered under the policy.

§627.6645(1) Fla. Stat. (2013) (**emphasis added**)

Although subsection (1) concludes that "policyholders shall forward, as soon as practicable, the notice of…to each certificate holder," *Id.,* subsection (1) first indicates that, "if cancellation is for nonpayment of premium, only the requirements of subsection (5) apply." *Id.* And subsection (5) does not include any language related to any potential obligations for policyholders; such as notifying certificate holders as soon as practicable. *Id.*

Contrary to Plaintiff's conclusory allegations to the contrary, subsection 5 only places obligations on insurers and not potentially on policyholders. Subsection 5 contains no requirement that the policyholder provide the certificate holder with notice of expiration, cancellation, or nonrenewal as soon as practicable. Subsection 5 only imposes obligations on insurers in the event of premium nonpayment and subsequent plan cancellation.

Nevertheless, despite the allegations to the contrary, (Doc 1 ¶43), should it be necessary, NAPA will allege and provide evidence that it did in fact both notify Plaintiff that it was cancelling the health insurance policy and that it did provide Plaintiff with the notice of cancellation; essentially the same notice as that provided by Plaintiff in Exhibit B dated December 10, 2013; after both the effective date of cancellation and of Plaintiff's surgery.

And even if the "as soon as practicable" potential obligation of subsection (1) applied to NAPA, given the date of the Notice, there was no practicable way that NAPA could have possibly done any more than provide Plaintiff with notice that it was cancelling the health insurance policy because it could not possibly have provided Plaintiff with a notice that did not exist before Plaintiff's actual surgery date.

Ultimately Count II of Plaintiff's Complaint against NAPA fails as a matter of law because §627.6645 Fla. Stat. (2013) applies to insurers that are regulated by Florida. Even assuming that there was an "as soon as practicable" notice requirement for employers (policyholders), NAPA could not have provided a notice that did not exist before the the date of the Plaintiff's surgery.

And, despite Plaintiff's conclusory statements to the contrary, there exist no statutory basis for bringing suit against an Employer under §627.6645 Fla. Stat. (2013) because this section governs insurers and not employers that are also insurers. Further, this section of the Florida Statutes was both devoid of any reference to any cause of action against employers or any private right of action against employers. Even considering Plaintiff's allegations as true, Plaintiff stated no claim against NAPA pursuant to §627.6645 Fla. Stat. (2013) for relief which might be given and Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(6).

### III.   <u>Conclusion and Prayer for Relief</u>

NAPA respectfully requests that this Court dismiss this cause of action against NAPA pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to state a cause of action because:

1. Plaintiff failed to allege or provide written documentation of any employment agreement or other agreement obligating NAPA to provide health insurance coverage for Plaintiff; and

2. ERISA does not create any substantive entitlement to employer-provided health benefits." *Curtiss-Wright at* 78; and

3. Under ERISA, employers may "adopt, modify, or terminate welfare plans" such as health insurance at will. *Id at* 79; and

4. §627.6645 Fla. Stat. applies to insurers and not to employers;

5. §627.6645(5) Fla. Stat. specifically applies to insurers cancelling group health plans in the event of unpaid premiums and imposes no obligations upon employers.

**Respectfully submitted this 5th day of July 2016**

> The Florida Legal Advocacy Group of Tampa Bay
>   /s/   *Adam S. Levine*
> Adam S. Levine, M.D., J.D.
> Florida Bar # 78288
> 1180 Gulf Boulevard, Suite 303, Clearwater, FL 33767
> (727) 512 – 1969 [Telephone]
> (866) 242 – 4946 [Facsimile]
> aslevine@msn.com [Primary E-mail]
> alevine@law.stetson.edu [Secondary E-mail]
> Trial Counsel and Counsel for Defendant
> Neurointerventional Associates, P.A.

## Local Rule 3.01(g) Certification

Pending receipt and review of this draft Motion, Pursuant to Middle District Rule 3.01(g), undersigned counsel for Defendant Neurointerventional Associates, P.A., certifies that he conferred with Plaintiff's Counsel after providing a draft version of this Motion regarding the relief sought. Counsel for Plaintiff stated that he intends to oppose this Motion.

    /s/   *Adam S. Levine*
Adam S. Levine, M.D., J.D.

## Certificate of Services

I, Adam Levine, hereby certify that on this date a true and accurate copy of his document was filed with the Clerk of Court using the CM/ECF system which also sent a notice of electronic filing to all counsel of record who have consented to electronic notification. I further certify that I mailed the foregoing document and notice of electronic filing by first-class mail to all non-CM/ECF participants.

    /s/   *Adam S. Levine*
Adam S. Levine, M.D., J.D.